# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY MANNING,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JULIE KELLY,<br><br>　　　　Defendant. | Case No.: 1:12-cv-01621-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 79]<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff Leroy Manning is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This case currently proceeds against Defendant Kelly on Plaintiff's claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302.

Currently before the Court is Defendant's motion for summary judgment, filed on December 9, 2016. (ECF No. 79).

## I.

## RELEVANT HISTORY

This action proceeds on the original complaint, filed on October 3, 2012. (ECF No. 1.)

On October 9, 2014, following certain issues concerning service of process, Defendant filed a motion to dismiss the complaint. (ECF No. 31.) On September 30, 2015, the motion to dismiss was denied, and Defendant was ordered to file an answer to the complaint. (ECF No. 47.)

1

1         On January 4, 2016, Defendant filed an answer to the complaint. (ECF No. 55.) On January 8, 2016, a discovery and scheduling order was issued. (ECF No. 56.)

        As noted above, on December 9, 2016, Defendant filed the subject motion for summary judgment. (ECF No. 79.) Plaintiff was provided with notice of the requirements for opposing that motion. Woods v. Carey, 684 F.3d 934 (9th Cir.2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir.1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir.1988). (ECF No. 79-1.) Plaintiff's opposition was due within twenty-one (21) days of service of Defendant's motion, but no opposition was filed.

        However, on January 10, 2017, Plaintiff filed a notice of change of address with the Court. (ECF No. 82.) On January 11, 2017, in cautious consideration of Plaintiff's recent address change, the Court sua sponte granted Plaintiff an extension of time to respond to Defendant's summary judgment motion. That order was served on Plaintiff at the updated address indicated in his January 10, 2017 notice of change of address. (ECF No. 84.) Nevertheless, no response was filed.

        On February 14, 2017, Defendant filed a declaration of counsel stating that the summary judgment motion is unopposed, in lieu of a formal reply. (ECF No. 85.) Thus, Defendant's motion for summary judgment is now deemed submitted for review. Local Rule 230(l).

## II.

## LEGAL STANDARD

        Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

        The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d

1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

A defendant does not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## III.

## DISCUSSION

### A.   Summary of Relevant Complaint Allegations[1]

The events at issue occurred while Plaintiff was housed at Avenal State Prison in Avenal, California. Plaintiff alleged that since around April 19, 2011, he was suffering from protruding hemorrhoids causing pain, bleeding, and difficulty having bowel movements. In July, August and September 2011, several specialists had examined Plaintiff and recommended him for surgery. Plaintiff understood that he was approved and scheduled for transportation and surgery.

On January 11, 2012, Plaintiff met with Defendant (a physician's assistant) and explained his symptoms. Defendant had Plaintiff turn around and bend over, used her finger to manually examine Plaintiff, and informed him she was going to cancel his surgery. Plaintiff became upset and asked why. Defendant replied, "Because you had the surgery once already." (Compl., ECF No. 1, at p. 6.) Plaintiff emphatically objected, describing how he is unable to have a normal bowel movement because of his condition, and Defendant replied, "Well, consider your surgery cancelled." (Id.)

Plaintiff requested the on-duty correctional officer in the adjacent hallway to come inside the examination room, saying, "Say man, get in here. This woman is crazy! She is telling me that she's

---

[1] Plaintiff's complaint is verified, and therefore constitutes an opposing affidavit for purposes of ruling on a motion for summary judgment. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

3

overriding a Doctor's Orders and I want you to note and remember this as a witness. She has no authority to override a Doctor's, the Specialists approval!" Plaintiff and the officer departed the examination room, and Defendant wrote down her Assessment, canceling Plaintiff's hemorrhoidectomy, refilling his medications, and scheduling a follow-up in 5-6 weeks.

Later, on March 8, 2012, after Plaintiff submitted a grievance complaint about Defendant's interference with doctors' orders, Plaintiff had a hemorrhoidectomy and was prescribed medications.

### B. Undisputed Material Facts[2]

#### 1. Medical Scheduling Procedures at Avenal State Prison

The California Department of Corrections and Rehabilitation (CDCR) provides medically necessary specialty services to inmates. (Madrid Decl., ECF No. 79-5, at ¶ 4.) Specialty services are ordered by an inmate's primary care physician. (Id.) The ordering physician completes a CDCR Form 7243 "Physician Request for Services" ("RFS"), for each recommended specialty service and must indicate the time frame in which the service is necessary: emergent, urgent, or routine. (Id.)

The RFS is then routed to the Utilization Management nurse, who enters the information from the RFS into InterQual, a program used to approve all requests for services submitted by medical providers. (Madrid Decl. ¶ 5.) InterQual maintains a list of criteria/medical conditions that must be met in order for a requested service to be approved. (Id.) If the requested service is approved through InterQual, a tracking number will be assigned. (Madrid Decl. ¶ 6.) The Utilization Management nurse writes the tracking number on the RFS, along with the date on which the RFS is processed into InterQual. (Id.) Thereafter, the RFS is reviewed by the Chief Medical Officer, Chief Physician and Surgeon, or designee, for approval. (Madrid Decl. ¶ 7.)

After the Chief Medical Officer, Chief Physician and Surgeon, or designee approves the RFS, the inmate is scheduled for a consultation with the specialist or surgeon. (Madrid Decl. ¶ 8.) The specialist or surgeon must fill out the bottom portion of the RFS, including date of the consultation, the findings upon examination, and the recommendation for medical treatment. (Id.) After the

---

[2] Derived from the statement of facts set forth in Defendants Motion for Summary Judgment, (ECF No. 79-2, pp. 2-5) and Defendants' Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment, (ECF No. 79-3).

specialist or surgeon completes the RFS, it is sent back to the inmate's physician for final approval of the recommended procedure or surgery. (Madrid Decl. ¶ 9.) The patient is scheduled within four weeks for a follow up with their primary care provider to review the recommendation of the specialist. (Id.)

The inmate's primary care physician reviews the RFS with the inmate, and determines whether to approve the surgeon or specialist's recommendation. (Madrid Decl. ¶ 10.) If the medical procedure is approved, the Medical Scheduler must schedule the surgery based upon how the treatment is categorized on the RFS: emergent, urgent, or routine. (Madrid Decl. ¶ 11.) If the procedure is "emergent," the medical scheduler must schedule the procedure within twenty-four hours of the date the RFS is written. (Id.) If the procedure is "urgent," the medical scheduler must schedule the procedure within fourteen days of the date the RFS is written. (Id.) If the procedure is "routine," the medical scheduler must schedule the procedure within ninety days of the date the RFS is written. (Id.) However, if the patient's symptoms and/or criteria listed by the physician on the RFS do not meet the criteria requirements in InterQual, the Medical Authorization Review ("MAR") Committee will meet to consider whether the requested medical service will be approved regardless of the InterQual outcome. (Madrid Decl. ¶ 13.)

After the appointment is scheduled, the inmate will receive a priority healthcare ducat for transportation to the appropriate medical facility, not sooner than twenty-four hours before the appointment. (Madrid Decl. ¶ 12.)

2. Plaintiff's Relevant Medical History

In 2004, Plaintiff underwent a hemorrhoidectomy to remedy a rectal prolapse. (Aug. 3, 2004 Discharge Summary, ECF No. 1, at p. 43; July 30, 2004 Operative Report, ECF No. 1, at p. 48.) Plaintiff's symptoms were relieved after this procedure, (Pl.'s Depo 14:23-16:10), until approximately April 19, 2011, when Plaintiff presented to Dr. K. Enomoto with complaints of rectal pain and discomfort when using the restroom, (Compl. at p. 4; Apr. 18, 2011 Progress Notes, Compl. Exh. 1, ECF No. 1, p. 21). Dr. Enomoto performed a digital exam and noted that Plaintiff had "moderate hemorrhoids." (Apr. 18, 2011 Progress Notes.) Plaintiff followed up with Dr. Enomoto a month later. (Compl. at p. 4; May 19, 2011 Progress Notes, Compl. Exh. 2, ECF No. 1, p. 22.)

Plaintiff saw Dr. R. Atienza on July 28, 2011, who diagnosed Plaintiff with rectal hemorrhoids and filled out a RFS, which requested an initial "routine" consultation with a surgeon. (July 28, 2011 Progress Notes, Compl. Exh. 3, ECF No. 1, at p. 23; July 28, 2011 RFS, Compl. Exh. 5, ECF No. 1, at p. 25.) Plaintiff then had a surgical consult with Dr. Bonnheim, who also filled out a RFS, to refer Plaintiff for a hemorrhoidectomy. (Sept. 28, 2011 RFS, Compl. Exh. 5, ECF No. 1, at p. 25.)

Plaintiff was scheduled to see his primary care physician for final approval, but Plaintiff refused to be examined. The doctor's notes indicate that Plaintiff stated "he does not want to do any more studies/visits," and Plaintiff was advised that the risks of refusal of treatment include misdiagnosis and a worsening of his condition. (Oct. 27, 2011 Progress Notes, ECF No. 79-5, at p. 12; Oct. 27, 2011 Refusal of Examination and/or Treatment Form, ECF No. 79-5, at p. 13.)

On December 9, 2011, Plaintiff submitted a CDC 7362 "Health Care Services Request Form," and inquired as to when he would have the hemorrhoidectomy. (ECF No. 1 Exh. 6, at p. 26.) Although Plaintiff did not obtain his primary care physician's approval for the procedure, it was approved on December 23, 2011 by the Medical Authorization Review ("MAR") Committee. (Madrid Decl. ¶ 14; Jan. 11, 2012 Medical Progress Note, Compl. Exh. 7, ECF No. 1, at p. 27.) Thus, in accordance with the scheduling procedures at Avenal, Plaintiff's "routine" hemorrhoidectomy needed to be scheduled within ninety days of the date it was approved—that is, by March 22, 2012. (Madrid Decl. ¶ 11.)

Plaintiff was then seen by Defendant on January 11, 2012, less than three weeks after the MAR Committee approved his surgery. (Kelly Decl., ECF No. 79-4, at ¶ 2; Jan. 11, 2012 Progress Note, ECF No. 79-4, at p. 4.) Defendant performed a digital exam, which included having Plaintiff bend forward, exposing the anus, so that Defendant could insert her index finger into his anus and palpate the area to determine the presence of masses and/or hemorrhoids. (Kelly Decl. ¶ 3.) Defendant noted minimal redness and "no palpable masses or large hemorrhoids." (Id. at ¶ 4; Jan. 11, 2012 Progress Note.) Plaintiff also denied any recent constipation, and also denied abdominal or rectal pain. (Id.)

Consistent with her duties and licensure, Defendant called Dr. Boparai, the Chief Physician and Surgeon, to discuss her findings. (Kelly Decl. ¶ 4.) As a physician's assistant, Defendant was not authorized to cancel any previously approved medical treatments, unless instructed to do so by a

physician. After Defendant informed Dr. Boparai about Plaintiff's examination results, Dr. Boparai determined that the hemorrhoidectomy was not medically necessary. (Id. at ¶ 6.) Defendant faxed the physician's order to the Utilization Management nurse to cancel the hemorrhoidectomy. (Id; Pl.'s InterQual Review Summary, ECF No. 79-5, p. 10.) Defendant also refilled Plaintiff's prior medications for stool softeners and fiber capsules, prescribed medication to help with his flatulence, and implemented dietary changes. (Jan. 11, 2012 Progress Note.) Defendant also answered Plaintiff's questions. (Id.) The same day, Plaintiff submitted a healthcare grievance regarding the cancellation of the procedure. (CDCR 602 ASP Log. No. 12023751, ECF No. 1 Exh. 9, at p. 29.)

On February 1, 2012, Plaintiff was seen by Dr. Kaleka, who examined Plaintiff and completed another RFS. (July 27, 2012 Director's Level Decision, ECF No. 1 Exh. 12, at pp. 32-33; February 1, 2012 RFS, ECF No. 79-5, at p. 8.) Dr. Kaleka requested a "routine" appointment for the hemorrhoidectomy. (February 1, 2012 RFS.) The hemorrhoidectomy was performed by Dr. Bonnheim on March 6, 2012. (Madrid Decl. ¶ 16, Mar. 6, 2012 Medical Procedure Note, ECF No. 79-5, at p. 15.)

**C. Analysis**

Defendant brings this motion pursuant to Federal Rule of Civil Procedure 56, arguing that the undisputed evidence demonstrates that Defendant was not deliberately indifferent to Plaintiff's serious medical needs because (1) Defendant was not subjectively aware that Plaintiff had a serious medical need and (2) Defendant consulted with a physician and did not fail to act or respond to Plaintiff's needs. Further, Defendant argues that the undisputed evidence shows that she did not cause harm to Plaintiff through her actions here.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at

1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1991)). A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotam, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted). In order to show a deliberate-indifference claim premised on delay, an inmate must demonstrate that the delay led to further injury. Trask v. Abanico, No. CV-08-1695, 2011 WL 3515885, at *5 (N.D. Cal. 2011) (citing Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2008)).

Defendant first argues that the undisputed evidence shows that she did not have the requisite knowledge of any "serious medical need" when Plaintiff presented to her on January 11, 2012. Rather, according to her notes, the examination revealed only a half centimeter of minimal redness around the anus and no palpable masses or large hemorrhoids, and Plaintiff reported no rectal pain or itching. Defendant asserts that these unremarkable medical findings did not place her on notice of serious risk of harm to Plaintiff, and that by conducting the examination and refiling his medications for his other issues, she was not indifferent to his subjective complaints.

Although Defendant recorded the examination results and comments by Plaintiff above in her notes, Plaintiff's verified complaint declares that during the examination, he explained to Defendant

8

that his hemorrhoids would protrude when he had a bowel movement. Plaintiff repeatedly offered to use the bathroom and attempt a bowel movement, as he did for prior doctors and specialists who had recommended surgery, so that Defendant could "observe what happens." (Compl. p. 6.) Plaintiff declares in his verified complaint that he informed Defendant Kelly he had done so to be diagnosed by the prior doctors and specialists.

According to Plaintiff, Defendant declined his offer, and after conducting her examination, told him that the surgery would be cancelled because Plaintiff previously "had the surgery once already." (Id.) Plaintiff declares that he protested this, informing Defendant that "I have to push my insides back inside me every time I use the bathroom three times a day; I can't have a normal bowel movement because of this, and you're telling me this is okay to have to go through this?" (Id.) Defendant nevertheless replied, "Well, consider your surgery cancelled." (Id.)

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842. A fact finder may conclude that an official knew of a substantial risk from the fact that the risk was obvious. Id. at 843 n.8. Moreover, "turning a blind eye to the relevant surrounding facts will not shield a prison official from liability." Swan v. United States, 159 F. Supp. 2d 1174, 1182 (N.D. Cal. 2001). "Farmer's subjective standard does not invite prison supervisors to bury their heads in the sand." Walton v. Dawson, 752 F.3d 1109, 1119 (8th Cir. 2014) (citing Farmer, 511 U.S. at 843 n.8) (finding that liability may be imposed "if the evidence showed that [a prison official] merely refused to verify underlying facts that he [or she] strongly suspected to be true, or declined to confirm inferences of risk that he [or she] strongly suspected to exist")).

Liberally construed, a reasonable fact finder in this case could conclude that Defendant did not allow Plaintiff to replicate the condition at issue during her examination of him, as he had done with prior physicians and specialists who had recommended a hemorrhoidectomy. Thus, Defendant has not shown an absence of evidence to support Plaintiff's allegation that Defendant was indifferent to Plaintiff's serious medical condition.

Defendant also argues that Plaintiff cannot show that her conduct was the cause of any harm him to him, as Plaintiff underwent the recommended procedure within the normal time period

9

required, irrespective of any action by Defendant on January 11, 2012. "Causation is, of course, a required element of a § 1983 claim." Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976); Berg v. Kincheloe, 794 F.2d 457, 460 (9th Cir. 1986)). When a plaintiff seeks to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation requires a "very individualized approach which accounts for the duties, discretion, and means of each defendant." Id. (citing Williams v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982)).

"Sweeping conclusory allegations will not suffice to prevent summary judgment." Id. (citing Berg, 794 F.2d at 460). Thus, the plaintiff must prove both that the defendant was deliberately indifferent in acting or failing to act, and that the indifference was the actual and proximate cause of the plaintiff's Eighth Amendment deprivations. Id. (citing Zalter v. Wainwright, 802 F.2d 397, 400-01 (11th Cir. 1986); Williams, 689 F.2d at 1380-81).

Plaintiff's claim is premised on a theory that Defendant prolonged Plaintiff's suffering from his hemorrhoid condition by delaying his surgery. Plaintiff repeatedly alleges in his complaint that his surgery was recommended on an emergency basis, and that his request to be seen on December 9, 2011 was because the scheduling of that surgery was months overdue. However, as Defendant argues, this allegation is unsupported by the evidence here.

The undisputed evidence in this case shows that, pursuant to CDCR's policies and procedures, Plaintiff's course of treatment for his hemorrhoid issues proceeded not on any emergent or urgent basis, but upon a routine basis. His consultations and recommendations, leading up to his surgical consult with Dr. Bonnheim on September 28, 2011, were consistently treated as routine matters. Accordingly, after that specialist recommended the hemorrhoidectomy, Plaintiff was scheduled for a follow up with his primary care physician, but he refused services at that time. Thus, his procedure had yet to be scheduled, and had not yet been approved when Plaintiff submitted his December 9, 2011 health care request, although it was later approved by the MAR committee.

The undisputed evidence also shows that at the time Plaintiff was seen by Defendant on January 11, 2012, there was still an outstanding referral of "routine" priority which had been generally approved, but there is no evidence that any surgery or procedure had yet been scheduled. Instead, the undisputed evidence is that the MAR committee had just approved the "routine" procedure a few weeks prior, and CDCR's policies allowed it to be scheduled within ninety days. Then, even accepting Plaintiff's declaration as true that Defendant refused to observe his condition and stated that his surgery should be declined because he had gone through the procedure before, the undisputed evidence is that Defendant did not have the authority to cancel his referral. Instead, Defendant consulted with a non-party physician, who found the recommended procedure medically unnecessary and directed Defendant to fax a cancellation request to the Utilization Management nurse. Plaintiff nevertheless proceeded with routine medical care, resulting in a consultation with Dr. Kaleka on February 1, 2012, who agreed with previous recommendations for scheduling the hemorrhoidectomy on a "routine" basis.

Thus, the undisputed evidence here shows that Plaintiff's procedure was approved by the MAR Committee on December 23, 2011, and his procedure was scheduled within the time permitted for a procedure recommended and approved on a "routine" basis under CDCR's policies. Although Dr. Boparai determined the procedure was medically unnecessary and had Defendant fax a cancellation request to the Utilization Management nurse, Plaintiff was nevertheless scheduled for the procedure within the time required. And although Plaintiff was seen by another physician, Dr. Kaleka, shortly after his examination by Defendant, and Dr. Kaleka agreed with Plaintiff and his other medical providers and specialists that the hemorrhoidectomy was needed, the procedure was not elevated or fast-tracked to an emergent or urgent scheduling. Rather, Plaintiff proceeded with the hemorrhoidectomy within ninety days of its approval. Accordingly, Plaintiff cannot show that Defendant actually or proximately caused him any harm through her actions here, and Defendant is entitled to summary judgment on that basis.

Finally, Defendant argues that she is entitled to qualified immunity here, because Plaintiff has failed to plead sufficient facts to state a violation of the Eighth Amendment against her, and because her actions were reasonable under clearly established law. Having found that Plaintiff has not shown

any triable issue of fact with regard to his Eighth Amendment deliberate indifference claim against Defendant, the Court does not find it necessary to reach Defendant's alternative argument that she is entitled to qualified immunity.

## IV.

## CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment, filed December 9, 2016 (ECF No. 79), be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 2, 2017**

UNITED STATES MAGISTRATE JUDGE